UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL CASE NO. |
| | : | 3:10-cr-14 (JCH) |
| v. | : | |
| | : | |
| KERRY MARSHALL, | : | SEPTEMBER 6, 2011 |
|     Defendant. | : | |

**RULING RE: DEFENDANT'S MOTION FOR RECONSIDERATION (DOC. NO. 161) AND MOTION FOR STAY AND POST-TRIAL DISCOVERY (DOC. NO. 166)**

**I.     INTRODUCTION**

On July 14, 2011, the court issued a Ruling (Doc. No. 157) on Marshall's Motion to Arrest Judgment (Doc. No. 139), Motion for Judgment of Acquittal (Doc. No. 140), and Motion for a New Trial (Doc. No. 141). The instant Ruling addresses Marshall's Motion for Reconsideration (Doc. No. 161) of that prior Ruling and Marshall's Motion for Stay and Post-Trial Discovery (Doc. No. 166). Familiarity with the court's prior Ruling and the background of this case is assumed.

**II.    MOTION FOR RECONSIDERATION**

**A.     Reconsideration Regarding the Motion to Arrest Judgment**

Marshall's Motion to Arrest Judgment raised Marshall's argument—previously raised and rejected numerous times in this case—that the Indictment is a "nullity" because the copy of the Indictment filed on the electronic docket (Doc. No. 1) bears a typewritten "/s/" in place of the grand jury foreperson's signature. As explained in the prior Ruling, the court has reviewed the copy of the Indictment on file with the court clerk which bears the original signature of the grand jury foreperson, and the court has concluded that there is "no basis for Marshall's belief that the Indictment was not

1

presented to the grand jury or returned with the concurrence of 12 grand jurors." Ruling (Doc. No. 157) at 8. Marshall's Motion for Reconsideration presents no reason to reconsider or alter that conclusion.

In a footnote that was not essential to the court's conclusion in the prior Ruling, the court noted that Section XI.C of "this District's Electronic Filing Policies and Procedures . . . provides that 'documents signed by a grand jury foreperson . . . or [a] federal officer or agent' may be filed 'as PDF documents containing a '/s/' signature.'" Id. at 8 n.3. This policy is a major focus of Marshall's Motion for Reconsideration. More fully quoted, the relevant passage of the Electronic Filing Policies and Procedures (the "ECF Policies") provides:

> Counsel may submit these documents [i.e., documents signed by a grand jury foreperson], in PDF format, as scanned documents containing the signature or as PDF documents containing a '/s/' signature.[1]

Unfortunately, a significant amount of Marshall's Motion is based on his incorrect belief that this policy is intended to permit documents to "be submitted by a grand jury foreperson containing an /s/ signature." Mot. at 7 (emphasis added); see also id. at 8 (describing the policy as one that "call[s] for grand jurors to place an /s/ on the face of an indictment"). Thus, in his Motion for Reconsideration, Marshall seeks to show that "the electronic signature alleged to be the grand jury foreperson," Mot. at 6, was not actually placed there by the grand jury foreperson. Marshall argues at length that the "/s/" must have been placed on the electronically-filed Indictment by the prosecutor, because only counsel, certain pro se litigants, and court personnel, not grand jury

---

[1] District of Connecticut Electronic Filing Policies and Procedures, Section XI.C, p.20 (emphasis added), available at http://www.ctd.uscourts.gov/cmecf/PDF%20Documents/policies_n_procedures.pdf.

forepersons, are permitted to file documents via the court's CM/ECF system.  See Mot. at 4-6; id. at 6 ("[T]here is no procedure in place for grand jury forepersons to register and receive a [CM/ECF] password, this without training, its clear that the /s/ is the work of the government attorney . . . .").  Notwithstanding the flaw in this reasoning (i.e., that the person who submitted the document on CM/ECF is necessarily the same person as the one that placed the '/s/' on the document), the court assumes that the conclusion is correct.  Indeed, the court has always assumed that the "/s/" was placed on the document either by the prosecutor or by someone acting on his behalf.  The point of citing the ECF Policies was to illustrate that this practice is ordinary and permitted by the court, not a cause for suspicion.  The ECF Policies plainly contemplate that counsel may prepare and file a copy of the document with the signature replaced by an "/s/."

Marshall objects that the policy at issue is not "consistent with protections afforded Defendants under the Fifth Amendment of the U.S. Const." Mot. at 6.[2]

---

[2] Marshall makes numerous other incorrect assumptions about the ECF Policies.  He objects that they are new, although they state on their face that they were last revised on 3/28/2008.  He objects that he had no notice of them, although they are available on the court's website, although familiarity with them is required to receive a CM/ECF password, and although they are expressly referenced in, and incorporated into, the Local Rules.  See L. R. Civ. P. 5(a) (pertaining to filing in civil cases); see also Fed. R. Crim. P. 49(d) (which makes the rules for filing in civil cases applicable in criminal cases).  Marshall also objects that the ECF Policies were not adopted pursuant to the notice and comment procedure required for adoption of Local Rules.  See Fed. R. Crim. P. 57(a)(1).  Marshall provides no basis for this factual assumption, and he overlooks the fact that the ECF Policies are not themselves Local Rules, but instead are policies for the use of the court's electronic filing system.  As noted, they are incorporated by L. R. Civ. P. 5(a), but Marshall does not claim that this Local Rule was not properly adopted.  Nor would he have any basis for doing so.  In any case, all of these objections are a sideshow.  The real issue is whether or not the practice permitted by the ECF Policies either resulted in or covered up a Fifth Amendment violation in this case.  As explained above, there is no basis for Marshall's claim that it did.

Marshall's many complaints about the ECF Policies notwithstanding, Marshall relies on another section of the ECF Policies to argue that the government is bound by its filing of the electronically signed copy of the Indictment.  Mot. at 4.  The ECF Policies provide that, as a general rule, "[w]hen a document has been filed electronically, the official record is the electronic recording of the document as stored by the court, and the filing party is bound by the document as filed." ECF Policies, Section II, p.8.  This general rule is obviously qualified by Section XI's rule permitting the substitution of certain required

However, Marshall fails to cite any authority for this claim in the Motion for Reconsideration. The court's prior Ruling explained that the authorities previously cited by Marshall undermine his claim that docketing of an electronically signed copy of the Indictment is inconsistent with the Fifth Amendment. See Ruling (Doc. No. 157) at 8 n.3.

Marshall argues that the court's prior discussion of those authorities overlooked their holding that the absence of a grand jury foreperson's signature "is fatal if it demonstrate on its face a failure of at least 12 grand jurors to concur, evidence by a certificate of concurrence filed with the Clerk of the Court." Mot. at 7. None of those cases so hold. Of course, it is true that an absence of concurrence by at least 12 grand jurors would be a problem, see Fed. R. Crim. P. 6, but the cases cited by Marshall hold that the absence of the foreperson's signature does not indicate an absence of such concurrence. See Hobby v. United States, 468 U.S. 339, 344 (1984) ("[T]he absence of the foreman's signature is a mere technical irregularity that is not necessarily fatal to the indictment."); Frisbie v. United States, 157 U.S. 160, 163 (1895) ("[Grand juries] return into court only those accusations which they have approved, and the fact that they thus return them into court is evidence of such approval, and the formal indorsement loses its essential character." (emphasis added)). In any event, in this specific case, the copy of the Indictment bearing the "/s/" signature is not indicative of a lack of concurrence. As discussed in the court's prior Ruling, the original Indictment bearing the original

---

signatures with electronic signatures. Any other reading would make nonsense of Section XI and create a trap for parties following its terms.

signature of the grand jury foreperson is on file with the Clerk.[3]  Thus, the docketing of a copy of the Indicment bearing an "/s/" signature is merely indicative of a decision to file in accordance with the court's ECF Policies.

Finally, to the extent Marshall is complaining that he has not seen a copy of the separate record showing the number of grand jurors who concurred in the Indictment, see Mot. at 6-7, such records are to be filed with the Clerk and "may not be made public unless the court so orders." Fed. R. Crim. P. 6(c). The court has confirmed that this record is properly filed with the Clerk and that the record shows that more than a sufficient number of grand jurors concurred in the decision to indict.  There is no need for the record to be made public in this case.  There has been no violation of Rule 6 or the Fifth Amendment.

Marshall has presented no basis for reconsidering the court's Ruling denying the Motion to Arrest Judgment.  Therefore, the Motion for Reconsideration is denied to the extent that it seeks reconsideration of that aspect of the court's prior Ruling.

## B. Reconsideration Regarding the Motion for Judgment of Acquittal

With respect to the court's Ruling on Marshall's Motion for Judgment of Acquittal, Marshall argues first that the court "neglect[ed] to properly cite the elements required . . . to prove the Defendant guilty . . . of bank fraud . . . ." Mot. at 10.  However, Marshall does not identify any particular deficiency in the court's recitation of the elements of bank fraud.  That statement of the elements was supported by quotations from Second Circuit authority.  See Ruling at 9-10.  Having failed to identify and support any specific

---

[3] A copy of that original Indictment has been submitted on the electronic docket in this case.  Doc. No. 46-1.  An unredacted copy of the signature page, bearing the full original signature of the foreperson, has in fact been docketed by Marshall himself.  Def. Motion (Doc. No. 59) at 26.

problem with the court's recitation of the law, Marshall has not provided a basis for reconsideration in this regard.

Marshall next claims that the court "enhanced the alleged government findings inside the defendant's residence by adding, A July 2006 Connex Statement (Gov. Exh. 49); Connex Cash Deposit Voucher (Gov. Exh. 50) and Connex ATM Deposit Envelopes (Gov. Exh. 70)." Mot. at 10. However, Marshall inaccurately describes the court's Ruling as relying on Rowe's testimony to establish that these items were found in Marshall's apartment. Nothing in the court's Ruling suggests such reliance. See Ruling at 12. As indicated earlier in the court's Ruling, the evidence that these items were found in Marshall's apartment was provided by the testimony of Postal Inspector Diaz. See Ruling at 5. In his Motion for Reconsideration, Marshall continues to insist that Postal Inspector Diaz could not have found those items in Marshall's apartment because they were not listed on the search inventory list. See Mot. at 10-11. The court addressed this argument fully in its prior Ruling. See Ruling at 16 n.4, 28.

Finally, Marshall objects to the court's discussion of the proof that Connex is federally insured. See Mot. at 11; Ruling at 13-14. Marshall asserts, without citation to the record, that Miscikoski, a representative of the National Credit Union Administration, "recanted all of his previous claims about Connex's insurance status." Mot. at 11. This is inaccurate. Marshall may be referring to Miscikoski's testimony that he lacked personal knowledge regarding the preparation of a certificate attesting to Connex's insured status. See Tr. at 570. Based on that testimony, the government withdrew its attempt to have the certificate admitted. See id. at 571. However, following that testimony, Miscikoski reaffirmed his prior testimony that he had personal knowledge,

based on his approximately 20 years of experience supervising Connex, that Connex was federally insured at all times relevant to this case.  See Tr. at 567-68; 570.  As the court explained in its prior Ruling, this testimony is adequate to support the jury's verdict.  See Ruling at 13-14.

In sum, Marshall identifies no error or oversight in the court's Ruling.  Therefore, Marshall's Motion for Reconsideration is denied insofar as it addresses the Ruling on his Motion for Judgment of Acquittal.

### C. Reconsideration Regarding the Motion for New Trial

Regarding the Motion for New Trial, Marshall's Motion for Reconsideration is primarily a summary of the arguments previously made and previously addressed in the court's prior Ruling.  The only new or additional claim Marshall makes is that the government "suggest[ed] to the Court false dates with respect to when any disclosures were made."  Mot. at 12.  With its Opposition to the Motion for Stay, the government has submitted copies of its disclosure letters supporting its claim that it made disclosures in connection with the prior case on February 26, 2007, and showing that it made them again in this case on February 3, 2010.  See Doc. Nos. 183-1, 183-2.  Each disclosure contains an express invitation to review the government's evidence.  See id.  These letters confirm the government's representations, and there is nothing else to indicate that the evidence at issue was unavailable to Marshall throughout both of the cases.  Therefore, Marshall has presented no reason to reconsider the court's Ruling on the Motion for New Trial.  The Motion for Reconsideration is denied in that regard as well.

## III. MOTION FOR STAY AND POST-TRIAL DISCOVERY

As its title suggests, Marshall's Motion for Stay and Post-Trial Discovery seeks

7

extraordinary relief. Marshall seeks to put off his sentencing following a trial and guilty verdict and to be granted the right to conduct discovery to "unearth the extent of the government abuse and misconduct." Mot. for Stay at 1. Marshall cites no precedent for granting such relief, nor any reason to believe that granting such relief would lead to the discovery of any abuse or misconduct. As grounds for suspecting misconduct, Marshall asserts, first, that the government failed to make disclosures required by Fed. R. Crim. P. 16.[4] The disclosure letters attached to the government's Opposition belie this assertion. See Doc. Nos. 183-1, 183-2. Marshall asserts, second, that the government has relied on a "secret" or "alternate docketed indictment," i.e., the original Indictment bearing the original signature of the foreperson. As discussed above, there is nothing unusual about the docketing process in this case, and the original Indictment and record of grand jury concurrence are both properly filed with the clerk. See supra at 1-5; Fed. R. Crim. P. 6(c) (providing that the record of the number of concurring grand jurors is to be filed with the clerk and not made public unless the court so orders); ECF Policies, Section XI.C (providing that counsel may docket a copy of an Indictment in which the original signature has been replaced by "/s/"). Given the absence of any evidence of government misconduct, there is no basis for staying this case in order to conduct discovery. Therefore, the Motion for Stay and Post-Trial Discovery is denied.

## IV. CONCLUSION

For the foregoing reasons, Marshall's Motion for Reconsideration (Doc. No. 161)

---

[4] Marshall claims that a letter from his former attorney supports his argument. That letter, dated June 6, 2007, is a cover letter which states in full: "Enclosed for your information are copies of materials I have received from the Government." See Motion for Stay at 5. It neither states when the materials were received nor what those materials were. The only thing this letter shows is that sometime on or before June 6, 2007, over four years ago, Marshall's former attorney had received materials from the government and that on June 6, 2007, he shared those materials with Marshall.

8

and Motion for Stay and Post-Trial Discovery (Doc. No. 166) are **denied**.

**SO ORDERED.**

Dated at Bridgeport, Connecticut, this 6th day of September, 2011.

     /s/ Janet C. Hall
Janet C. Hall
United States District Judge